# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,    :    Case No. 3:08-cr-037
                                    also 3:11-cv-219

  - vs -                                   District Judge Walter Herbert Rice
                                              Magistrate Judge Michael R. Merz

BUTCH R. DIXON,

        Defendant.    :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant's Objections (Doc. No. 76) to the Magistrate Judge's Report and Recommendations ("Report," Doc. No. 74) recommending Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 73) be dismissed with prejudice. Under the General Order of Assignment and Reference for the Dayton location of court, a magistrate judge has authority to supplement a report and recommendations when objections are made.

### Authority of the Magistrate Judge

Fully half of Defendant's Objections are devoted to his claim that the Magistrate Judge acted without authority or jurisdiction in filing the Report (Objections, Doc. No. 76, pp. 1-7.)

Defendant begins by objecting that he never consented to magistrate judge involvement in this proceeding, either expressly or implicitly. However, consent of the parties is only required for magistrate judge authority under 28 U.S.C. § 636(c). Petitioner is quite correct in noting that

Congress, in enacting 636(c) in 1979, adopted many safeguards to ensure that any waiver of the parties' right to adjudication by an Article III judge be knowing, intelligent, and voluntary. Thus such consent must be unanimous and the court must take care that declinations of consent are anonymous. While the court may seek consent, it must always remind the parties that failure to consent will have no adverse substantive consequences. The Magistrate Judge does not suggest that § 636(c) is applicable to these proceedings or that Defendant (or indeed the United States) has ever consented to plenary magistrate judge jurisdiction over these § 2255 proceedings.

Instead, the Report was prepared and filed pursuant to 28 U.S.C. §636(b)(1) which provides in pertinent part:

> Notwithstanding any provision of law to the contrary...
>
> (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) of applications for posttrial relief made by individuals convicted of criminal offenses and or prisoner petitions challenging conditions of confinement.

A motion under 28 U.S.C. § 2255 is plainly an application for posttrial relief made by a convicted person, as are petitions for writs of habeas corpus, petitions for writs of error coram nobis, etc. The intent of Congress to allow referral of § 2255 motions to magistrate judges is plain on the face of the statute.

Moreover, the designation referred to in the statute has been made at the Dayton location of court by the General Order of Assignment and Reference which provides that every new case, including every new § 2255 filing, will be assigned randomly to one of the three magistrate judges located in Dayton and that some classes of those cases – including posttrial applications by convicted persons – will be automatically referred to the Magistrate Judge who has been assigned

to the case. Nothing in Title 28 or the case law requires that referrals to magistrate judges cannot be made categorically or must be made on a case-by-case or motion-by-motion basis. The General Order of Assignment and Reference, which is available to the public on the Court's website, is notice to all that such references will be made and how they will be made.

Mr. Dixon objects that this process is unconstitutional, but no court has ever so held. Mr. Dixon objects that Rule 4 of the Rules Governing § 2255 Proceedings provides that a judge shall make the determination of whether to dismiss the motion on the record or order the Government to answer, but nothing in those Rules suggests a judge may not use the process provided in 28 U.S.C. § 636(b)(1)(A) to obtain a magistrate judge's recommendation on that decision.

## The Substance of Defendant's Claims

### Faulty Indictment

Mr. Dixon asserts three formal errors in the institution of these proceedings: (1) failure of the grand jury foreperson to sign the Indictment, (2) failure of an attorney for the United States to sign the Indictment, and (3) failure to file the grand jury concurrence form showing that at least twelve grand jurors concurred in the Indictment. He further asserts that these deficiencies deprive this Court of subject matter jurisdiction over the case.

For the reasons given in the Report, all of these claims are procedurally defaulted because they were not raised prior to trial as required by Fed. R. Crim. P. 12(b)(3) nor were they raised on direct appeal.

Mr. Dixon concedes his "double procedural default," but attempts to excuse it by claiming

it was ineffective assistance of counsel to fail to raise these claims.  While ineffective assistance of counsel can excuse a procedural default, any claim of ineffective assistance of counsel must meet the standard of *Strickland v. Washington,* 466 U.S. 668 (1984), that is, the claimant must show deficient performance by his attorney and resulting prejudice.  If an argument which was not made by the lawyer would have been completely without merit and unavailing, it cannot have been ineffective assistance of counsel for the lawyer to have failed to make the argument.  An attorney need not advance every argument, regardless of merit, urged by the client.  *Jones v. Barnes*, 463 U.S. 745 (1983). Effective attorney advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004);*See Smith v. Murray*, 477 U.S. 527 (1986).

For the reasons given in the Report, all of Mr. Dixon's claims regarding the Indictment are without merit.  While the concurrence form is required to be filed, that rule is satisfied if it is filed in the secret grand jury files.  There is no requirement in the Rules that the indictment be signed by the grand jury foreperson.  And the fact that there exists a conformed copy of the Indictment which contains a conformed ("s/") copy of Mr. Patel's signature is no proof that he did not sign the Indictment.

The nature of these claims demonstrates why they must be raised before trial.  If they had been raised then, Judge Rice could have examined the concurrence form *in camera* and Defendant could have been furnished with a photocopy of the original of the Indictment bearing Mr. Patel's ink signature.

Even if there were all these asserted deficiencies in the Indictment, Mr. Dixon would still not be entitled to relief, because deficiencies in an indictment do not deprive the Court of jurisdiction. In *United States v. Cotton*, 535 U.S. 625 (2002), the Supreme Court held that failure

to charge the element of the amount of drugs in an indictment, a far more serious formal error than the ones alleged here, is not jurisdictional.  *Ex parte Bain*, 121 U.S. 1, 30 L. Ed. 849, 7 S. Ct. 781 (1887), which had been to the contrary was expressly overruled.  *Cotton* also held omission of the drug amount is not even plain error; if not raised in the district court, it cannot be raised on appeal because it is waivable and therefore also forfeitable.  *Id.*  That of course is what happened here.

### Ineffective Assistance of Counsel

In his second ground for relief, Dixon makes a free-standing[1] claim of ineffective assistance of trial counsel that his trial attorney failed to investigate and prepare for trial.  He specifies two failures of defense counsel at trial, failures to call Scott Houchins, identified in the Motion as a "CI," and Petitioner's cousin Kevin Tincher to testify.

In the original § 2255 Motion, Mr. Dixon failed to identify any testimony either one of them would have given which would have been favorable to his defense.  To correct that omission, he attaches to his Objections the Affidavits of Janet and Kevin Tincher to support his claim that his lawyer failed to call witnesses whose testimony probably would have affected the outcome of the trial.

Janet Tincher avers that she was present at trial and that she "was never given the opportunity to testify to the subject matter related to the reason Kevin [Tincher] was at Butch Dixon's apartment when he was arrested."  Had she been called, she would have been prepared to testify

---

[1] "Free-standing" as opposed to claim ineffective assistance of counsel to excuse procedural default as to the defective indictment claims,

> That the real reason Kevin Tincher was at Butch Dixon's apartment the day of his [Dixon's] arrest was Butch was cooperating with Kevin because he [Kevin] wanted to meet with governments informant over personal issues not related to the conviction.

(Janet Tincher Affidavit, Attachment to Doc. No. 76, ¶¶ 5, 9.)

While Janet Tincher never gives the substance of her testimony or how she knew it, her Affidavit appears to be intended to corroborate Kevin Tincher's Affidavit which avers that he called Dixon who told him Scott Houchins, the confidential informant, called Dixon about a robbery Houchins took part in in which Houchins acquired money and cocaine (Kevin Tincher Affidavit, Attachment to Doc. No. 76, ¶ 2). Why Dixon wanted Tincher to call him about Houchins' message is not stated.  Houchins allegedly owed Tincher money, so Tincher told Dixon to do whatever he needed to do to get Houchins to Dixon's apartment so Tincher could get his money. *Id.* ¶¶ 3-6. Tincher avers that when Houchins arrived, Dixon called Tincher to tell him Houchins was there and Tincher told Dixon to get Houchins because "if Houchins sees me he will drive away and I will not get my money" and that is why Dixon "lured" Houchins to Dixon's apartment. *Id.* ¶¶ 8-9.  Tincher admits that Houchins thought Dixon sold drugs and had called Dixon to buy drugs. *Id.* ¶ 16. Tincher says he told Dixon that Houchins must have inferred Dixon was a drug dealer from the presence of Dixon's phone number on Houchins' telephone after Tincher used Houchins phone to call Dixon. *Id.* ¶¶ 17-18. Why Houchins would have made that leap of logic is left a mystery.  Is Dixon listed on Tincher's phone as "my cousin, the drug dealer"?

In order for Kevin Tincher's testimony to have produced an acquittal, the jury would have had to believe him over the testimony of ATF Agent Godsave who testified about how the meeting with Dixon was set up and what its purpose was.  He would have had to explain why it was that he went down from his apartment with a duffle bag to meet Houchins and Godsave and actually took delivery of two or more kilograms of sham cocaine in that duffle bag.  And he would have had to

explain away the damaging recorded telephone conversations with Houchins. It seems very unlikely the jury would have believed Kevin Tincher in the face of this evidence.

Tincher avers that Dixon asked his attorney "Ladd"[2] to call Tincher as a witness, but the attorney refused. *Id.* ¶ 15. Tincher implies that he would gladly have testified. He does not mention that he was at the same time under indictment in this Court in Case No. 3:08-cr-036 for drug and firearms offenses on several of which he eventually pled guilty and was sentenced to twelve years confinement. Had he taken the witness stand in Mr. Dixon's case, he would certainly have been subject to cross-examination at least about his own prior felony convictions. He would also have had to explain his presence with the undercover ATF agent and the confidential informant during the calls made to Dixon to set up the meeting. None of this makes Mr. Tincher seem like a particularly convincing witness in the drug trafficking trial of his cousin. And it also seems unlikely Mr. Tincher's counsel in his own case would have readily permitted him to testify in Dixon's case.

In sum, not calling Kevin Tincher as a witness is easily seen as a wise strategic decision on Mr. Dixon's counsel's part: he did not have a coherent story to tell and he was not himself a particularly convincing witness. The Magistrate Judge concludes that failure to call Kevin Tincher was a sound decision on Mr. Lewuis' part and not ineffective assistance of counsel.

Mr. Dixon also complains that Attorney Lewis was ineffective in failing to preserve Dixon's right to confront the informant, Scott Houchins. As noted in the Report, confrontation is a trial right and Defendant has not pointed to any statements of Houchins which were admitted against him at trial.

---

[2] Dixon was represented at trial by attorney Terry Lewis, not anyone named Ladd.

**Conclusion**

Mr. Dixon's claims are without merit and, in the case of the faulty indictment claims, also procedurally defaulted. The Motion to Vacate should therefore be denied with prejudice. Because reasonable jurists would not disagree with this conclusion, Mr. Dixon should be denied any requested certificate of appealability and leave to appeal *in forma pauperis.*

July 25, 2011.

                                                      s/ **Michael R. Merz**
                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).